

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

151 West Seventh Avenue, Suite 300
Post Office Box 1335
Eugene, Oregon 97440

(541) 465-6802
FAX: (541) 465-6899

April 19, 2006

Mr. Tom Dzieman
915 West 10th Street
Medford, OR 97501

Mr. Kelley A. Blaine
Special Assistant U. S. Attorney
620 S. W. Main Street, Room 312
Portland, OR 97205

CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

MAY 3 1 2006

LODGED _____ REC'D _____
PAID _____ DOCKETED _____

RE: CARPENTER, Bruce & Carolyn; Case No. 04-68321-aer7
United State's Motion for Summary Judgment

Counsel:

This letter is intended to announce my findings of fact and conclusions of law on the above-referenced motion.

**Procedural Background:**

Debtors filed their Chapter 7 petition herein on October 22, 2004. The case is being administered as an asset case.

The Internal Revenue Service (IRS), filed proof of claim #1 for $595,752.38, secured. Debtors objected to the claim. IRS filed a response to the objection.

On November 16, 2005, IRS moved for summary judgment on its claim. Debtors responded. On January 12, 2006, my law clerk advised the parties by letter of deficiencies in the summary judgment documents. IRS was given until February 1, 2006 to file complying documents.

On January 31, 2006, IRS filed the instant amended motion for summary judgment, to which Debtors have responded, and IRS has replied. I heard oral argument on March 14, 2006. The matter is now ripe for decision.

**Facts:**

From the documents submitted in support of and opposition to the motion, and the documents of which I can take judicial notice, it appears the following are undisputed:

When the case was filed, Debtors listed no real property on Schedule A. They listed no ownership of any interests in any trusts on Schedule B.

Candace Amborn was appointed Chapter 7 Trustee (Trustee). The Chapter 7 estate claims an interest in property on Modoc Rd., in White City, Oregon (the Modoc property), which consists of 13320 Modoc Rd, plus two tax lots without street addresses.

On March 23, 2005 an order was entered authorizing abandonment of the Modoc property, effective upon recording of Trustee's Notice of Abandonment in the official records of Jackson County. Trustee has never recorded the notice of abandonment.

On February 21, 2006, Trustee moved to sell the Modoc property free and clear of liens and interests, subject to competing claims of ownership in the proceeds. Amongst those entities claiming ownership are two trusts, "American Funding" and "Rogue River Land Trust."

On March 24, 2006, after a March 14, 2006 hearing at which no objections were lodged, an order was entered allowing sale of the Modoc property free and clear of liens, the proceeds, excluding certain costs of sale and taxes, to be held pending further court order.

Tax Years:

1988, 1989, & 1990

Debtors filed their 1988, 1989 and 1990 income tax returns on April 15th of 1989, 1990, and 1991, respectively. On December 21, 1992, Debtors signed a consent to extend the statute of limitations for assessment of additional taxes, (Form 872-A) for years 1988 and 1989.

A notice of deficiency was issued to Debtors for tax years 1988, 1989, and 1990 on September 23, 1994.[1] Debtors filed a petition with the United States Tax Court with respect to the notice of deficiency. Deficiencies for tax years 1988, 1989 and 1990 were subsequently determined pursuant to a stipulated decision of the United States Tax Court at Docket No. 23735-94, entered October 16, 1995.

Liability for tax years 1988 and 1990 were assessed on February 5, 1996. Liability for tax year 1989 was assessed on December 27, 1995. The 1988 tax liability has been paid in full.

1994

Debtors filed their 1994 income tax return on April 15, 1995. A notice of deficiency was issued to Debtors on March 12, 1998. Liability for tax year 1994 was assessed on August 5, 1998.

---

[1] The date-stamp on the Notice of Deficiency (Exhibit F to Mr. Blaine's Declaration), is illegible. IRS' Concise Statement at ¶ 6 states the date of this deficiency notice was September 23, 1994. Debtors do not dispute this date.

## 1995

Debtors filed their 1995 income tax return on April 15, 1996. Liability for tax year 1995 was assessed on March 8, 1999.

## 1996

Debtors' filed their 1996 income tax return on April 15, 1997. A notice of deficiency was issued to Debtors on May 28, 1999.

Debtors filed a petition with the United States Tax Court with respect to the notice of deficiency. Trial was called on February 21, 2001. Debtors did not appear. IRS moved to dismiss for lack of prosecution. That motion was granted and the case dismissed by order entered March 13, 2001, said dismissal order also determining a tax deficiency and penalty for tax year 1996. Liability for tax year 1996 was assessed on August 27, 2001.

## 1997

Debtors filed their 1997 income tax return on October 19, 1998. Liability for tax year 1997 was assessed on April 30, 2001.

**Summary Judgment Standards:**

On a motion for summary judgment, the moving party has the burden to establish the absence of a material issue of fact for trial. FRCP 56(c). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Service., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202, __ (1986). No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, or shows "some metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, __ (1986).

With regard to its own claims or defenses, (i.e. those elements for which the moving party bears the burden of proof at trial) the movant "must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2557, 91 L. Ed. 265, __ (1986)(Brennan, J)(dissent). There must be more than a "scintilla," indeed the evidence must be "significantly probative." Anderson, supra at 249-51, 106 S. Ct. at 2511, 91 L. Ed. 2d at __ (1986). If the movant makes the requisite affirmative showing, the burden of production shifts to the non-moving party to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial, (i.e. significant probative evidence tending to support its claim or defense.) Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.1991) (quotation omitted), or to submit an affidavit requesting additional time for discovery. Celotex, supra at 331, 106 S. Ct. at 2557, 91 L. Ed. 2d at __ (Brennan dissent).

With regard to a motion for summary judgment <u>attacking</u> the opposing party's claims or defenses (i.e. those for which the <u>nonmovant</u> has the burden of proof at trial), and assuming sufficient time for discovery, the movant may discharge his Rule 56 burden in two ways. He may submit evidence affirmatively negating elements of the nonmoving party's claims or defenses (method one) or, he may affirmatively demonstrate (other than by a conclusory

statement) that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim (method two), Id, as there is "no express or implied requirement... that the moving party support its motion with affidavits or other similar material negating the opponent's claim." Id. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at __ (majority opinion).

Once the moving party has met its burden of production under either method,[2] the directed verdict standard once again comes into play, as the burden shifts to the nonmoving party to produce evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial. Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir. 1995) (quotation omitted). This again requires the nonmoving party to produce significant probative evidence. Anderson, supra at 351, 106 S.Ct. at 2512, 91 L. Ed. 2d at __ (a dispute with regard to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

A rebuttable presumption in favor of one party imposes on the other party the burden of production, i.e. the burden of going forward with evidence, but it does not alter the ultimate burden of persuasion. The existence of a presumption alters a summary judgment movant's ability to meet its summary judgment burden of production because the presumption excuses the beneficiary from having to put forth evidence until the party against whom the presumption operates puts forth "evidence to rebut or meet the presumption." Devan v. The CIT Group et. al., (In re Merry Go-Round Enterprises, Inc.), 229 B.R. 337, 341 (Bankr. D. Md. 1999)(internal quotation omitted).

All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Simone v. Manning, 930 F. Supp. 1434 (D. Or. 1996). When different ultimate inferences can be reached, summary judgment is not appropriate. Id.

Rules 56(c) & (e) list the types of evidence that can be used to support or oppose summary judgment. They include: 1) affidavits, 2) answers to interrogatories; 3) admissions; and 4) depositions. Argument, unsupported by factual statements or evidence cannot be used. Lewis v. Scott (In Re Lewis), 97 F.3d 1182 (9th Cir. 1996).

In general, materials in support or opposition to summary judgment must be admissible evidence, Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988), which includes authentication thereof. Id. at 1182.

Under FRCP 56(e) supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. See also, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989)(facts in affidavit must be admissible under the rules governing admission of evidence). An affiant's

---

[2] If the moving party attempts to use method two, the nonmoving party may also call the court's attention to evidence already in the record that the movant has overlooked or ignored. In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking the entire record allegedly supporting the nonmoving party that a moving party satisfies Rule 56's burden of production. Celotex, supra at 332, 106 S. Ct. at 2557, 91 L. Ed. 2d at __ (Brennan dissent).

personal knowledge and competence may be inferred from the affidavit itself. Barthelemy v. Air Lines Pilots Ass'n., 897 F.2d 999 (9th Cir. 1990).

For lay witnesses, conclusory, self-serving affidavits, lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact. FTC v. Publishing Clearing House, Inc., 104 F.3d 1168 (9th Cir. 1996). Therefore, such conclusory affidavits are insufficient to support a movant's burden on its own claims, Washington Physicians Service Ass'n. v. Gregoire, 147 F.3d 1039 (9th Cir.1998), or even to show the absence of a material issue of fact when the movant does not have the burden at trial. United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir.1999); F.T.C., supra; see also, Lujan v. National Wildlife Fed'n., 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695, __ (1990)(the object of FRCP 56(e) is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit).

As to experts, the proper accommodation between Rule 56(e) and FRE 705, allows expert opinion to be admissible and to defeat summary judgment "if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir. 1986). If further facts are desired, the movant may request and the court may require their disclosure. Id.

In reviewing a motion for summary judgment, the response thereto, and the evidence supporting and opposing the motion, I have no independent duty to search the record. LR 56.1(e) (made applicable by LBR 7056-1).

**Discussion:**

Summary Judgment Permitted on Claims Objections:

Debtors argue in their response to the present motion that a claims objection can't be decided on summary judgment because 11 U.S.C. § 502(b)[3] requires determination only "after notice and a hearing."[4] This argument lacks merit. First, as noted above, a hearing was conducted on March 14, 2006. Second, in any event, a hearing was not necessary. Section 102(1)(a) defines "after notice and a hearing" as consisting of two (2) things, appropriate notice, and such opportunity for a hearing as is appropriate in the particular circumstances. The Bankruptcy Rules help define under what circumstances a hearing is required. A claims objection is a "contested matter." The Rules specifically contemplate motions for summary judgment for contested matters, as FRBP 9014(c) provides that FRBP 7056 (*which incorporates*

---

[3] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

[4] Section 502(b) provides in pertinent part:

> Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that....

*FRCP 56's summary judgment rule*) applies, unless the court directs otherwise. I have not directed otherwise.

Claims Matters not Moot:

Debtors object based on mootness, arguing the only asset available to pay claims, the Modoc property, has been authorized to be abandoned by the order entered March 23, 2005, although the abandonment has not been finalized. They argue that upon the recording of the notice of abandonment in the Jackson County records, the abandonment will be complete. This objection lacks merit. Trustee has never recorded the notice of abandonment.[5] In fact, Trustee has now sold the Modoc property pursuant to the March 24, 2006 order referenced above.

Prima Facie Validity of Claim:

Debtors argue IRS' proof of claim is not entitled to prima facie validity.

A properly filed proof of claim is entitled to prima facie validity under FRBP 3001(f).[6] Tax claimants need not attach a "writing" under FRBP 3001(c)[7] to get prima facie effect. State Bd. of Equalization v. Los Angeles International Hotel Associates *(In re Los Angeles International Hotel Associates)*, 106 F.3d 1479 (9th Cir. 1997), holding "a written assessment enforces the pre-existing obligation..the obligation is ascertainable even absent such a writing...Simply put..no writing is required to create tax liability." Id. at 1480. Debtors attempt to distinguish Los Angeles International as there, a state "use" tax was involved, whereas here, federal income tax is involved. However, in my research, Los Angeles International has been uniformly applied in the federal tax context. See e.g., Mulvania v. U.S. *(In Re Mulvania)*, 214 B.R. 1, 7, n.8 (9th Cir. B.A.P. (C.D. Cal.) 1997); Bozich v. I.R.S. *(In Re Bozich)* 212 B.R. 354 (Bankr. D. Az. 1997), *aff'd*, 242 B.R. 704 (D. Az. 1999).

Thus, because of its prima facie validity, the proof of claim, <u>in and of itself</u>, is sufficient to carry IRS' initial summary judgment burden. Debtors, therefore, must point to some evidence which raises a genuine issue of material fact as to the claim's validity. In Re Pugh, 315 B.R. 889

---

[5] As represented at a February 16, 2006 status conference, the notice of abandonment was recorded by Mr. Nunley (American Funding's attorney) without Trustee's authorization, and was thus in contravention of the abandonment order. As such, the recordation is void.

[6] FRBP 3001(f) provides:

> A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

[7] FRBP 3001(c) provides:

> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(Bankr. D. Nev. 2004). As noted by Debtors, that evidence may not only consist of what they adduce, but also what IRS has adduced. Jones v. U.S., 60 F.3d 584 (9th Cir. 1995).[8]

NFTL validity:

The claim is filed as fully secured. The proof of claim attached four (4) notices of federal tax liens (NFTLs).[9] Debtors argue none of the NFTL's were certified as required by both federal and state law. Debtors' arguments go to whether or not the tax liens were properly perfected, not to whether the liens exist. Normally, only a Chapter 7 trustee has standing to avoid un-perfected tax liens. See, § 545; In re Mulligan, 234 B.R. 229 (Bankr.D. N.H. 1999). In any case, Debtors cite no federal or state authority requiring 'certification" of an NFTL. It is incumbent on them to cite authority for their arguments. In fact, this argument appears to have been abandoned, as their response to the motion for summary judgment does not address it. Nevertheless, as discussed below, summary judgment as to the claim's secured status is being denied for other reasons, as such, I need not further address "perfection" issues at this juncture.

Secured Status of Claim:

IRS claims it is secured in the Modoc property and property located at 2435 Arrowpoint Ct. in Medford, which IRS argues is Debtors' principal residence. The proof of claim does not indicate which Jackson County properties are security, nor do any of the attached NFTLs. Section 506(a) gives secured status only to those claims secured by estate property. Therefore, if a claim is secured by non-estate property, it would not be a secured claim vis a vis this estate, rather, it would be an unsecured claim against the estate. I.R.S. v. Snyder, 343 F.3d 1171 (9th Cir. 2003).

I take judicial notice that Debtors did not claim an ownership interest in any real property on Schedule A. As to the Modoc property, I also take judicial notice that: 1) multiple parties (including the estate) claim an ownership interest in same; 2) such ownership rights were discussed by all concerned parties at the February 16, 2006 status conference and it was agreed that the property could be sold free and clear of liens with all parties retaining whatever rights they had to the property in the proceeds thereof, and 3) an order authorizing sale of the property free and clear of liens and interests has been entered. Further, as to the Modoc property, it is arguable whether a ruling here would bind the alleged owner trusts, as they are not parties to the present claims objection. Based on the above, I will deny summary judgment as to the secured

---

[8] Jones did not involve a bankruptcy proof of claim. Nevertheless, it is support for the proposition that IRS' own documents may be used to rebut a presumption of validity, and raise an issue of fact for trial. There, the IRS moved for summary judgment in a tax refund suit. It relied on its Form 4340s (Certificate of Assessments, Payments and Other Specified Matters) for proof that penalties were assessed within the applicable limitations period. Like FRBP 3001(f), Form 4340 normally establishes a prima facie case. Id. In Jones, however, IRS' own documents, which it adduced in support of summary judgment, created the issue of fact, in that several official documents contradicted the Form 4340s.

[9] Of the four NFTLs, two were filed on July 2, 1996, in Jackson County, to secure liability for 1988, 1989, and 1990 taxes, one against "The Colby Foundation" as Debtors' nominee, and the second against "Colby B. Foundation" as Debtors' nominee. The third NFTL was filed on December 17, 1998, in Jackson County against Debtors for 1994 and 1996 taxes. The fourth was filed on December 10, 1998 in the Oregon Secretary of State's office, against Debtors for 1994 and 1996 taxes. There is no NFTL covering 1995 or 1997 taxes attached to the proof of claim.

status of the claim (vis a vis the estate), as there is a genuine issue of material fact as to whether the estate has an interest in the claimed security.[10]

Accounting:

Debtors object based on IRS' failure to provide an accounting of monies received from "garnishing" Debtors, including monies garnished within 90 days of the bankruptcy filing. I can construe this objection as Debtors' request for more time for discovery, so as to allow them to respond more completely to IRS' motion. I deny such request.

This is a contested matter governed by FRBP 9014. FRBP 7016(b) governs scheduling orders. That rule is not named in FRBP 9014 as applying by default. However, FRBP 9014(c) allows the court to direct that it applies. On July 27, 2005, I entered a scheduling order. FRBP 7016 thus applies. The scheduling order set October 27, 2005 as the close of discovery.

FRBP 7016 incorporates FRCP 16(b) which allows extension of scheduling order deadlines only upon a showing of "good cause." Under Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), the "good cause" standard primarily considers the diligence of the party seeking the amendment. The court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. (internal quotation omitted). [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." Id. (internal citations omitted).

Debtors have not shown "good cause" to extend the October 27, 2005 discovery deadline. They adduce no affidavit or other declaration attesting to IRS' failure to respond to discovery requests for an accounting. FRCP 56(f). Further, the present objection has been pending since July, 2005. If IRS has been recalcitrant, Debtors have had plenty of time to seek production.

Alternatively, I could construe the "failure to account" objection as going to the amount of the claim (i.e. failure to credit monies paid against the tax liabilities in question). In this regard, Debtors have adduced no evidence rebutting the claim's prima facie validity.

Statute of Limitations

Debtors object on the basis that the claims are time barred as being outside the 3 year period for assessment.

The IRS generally has 3 years from the date a return is filed to make an assessment. 26 U.S.C. § 6501(a). Under certain circumstances, this period may be extended by agreement with the taxpayer. 26 U.S.C. 6501(c)(4). If the IRS audits the return and decides more taxes are due, it issues a notice of deficiency under 26 U.S.C. § 6212, which then suspends the statute of

---

[10] This is not to say an IRS lien on non-estate property would be invalid. See Snyder, supra.

limitations for a minimum of 150 days (90 days to file a Tax Court petition + 60 days).[11] 26 U.S.C. § 6503(a). If the taxpayer files a Tax Court petition, the limitations period is suspended until the Tax Court's decision becomes "final", plus 60 days. 26 U.S.C. § 6503(a). If there is no appeal, it takes 90 days for a Tax Court decision to become "final."[12] Thus if a Tax Court petition is filed, the 3 year statute of limitations is suspended for at least 150 days following entry of the Tax Court's decision. Finally, any unexpired portion of the 3 years that existed before the notice of deficiency was issued, may be "tacked on" after any suspension of the statute of limitations has ended. See, Meridian Wood Products Co., Inc. v. U.S., 725 F.2d 1183 (9th Cir.1984); U.S. v. Anderson, 2001 WL 1203340, *3 (N.D. Ind. 2001).

Debtors argue the proof of claim itself, along with the NFTLs attached thereto, create an issue of fact as to timely assessment, because the assessment dates for all years except 1995 and 1997 are more than 3 years from the date the returns were filed. I disagree. First of all, the proof of claim and the NFTLs do not indicate when the returns were filed, thus they do not indicate a beginning point for the 3 years. That said, the IRS has adduced excerpted Form 4340s which show, with the exception of years 1995 and 1997, the assessments were made more than 3 years after the returns were filed. However, again, this is insufficient to create a factual issue, because other uncontradicted evidence adduced, including other information in the Form 4340s themselves, show either extensions of the limitations period or that Debtors are now barred from asserting the limitations defense. Taking the limitations issue by tax year:

1988: Although the proof of claim shows a $500 penalty owed for 1988, the IRS has since stated the 1988 tax liability was paid, in full, in February, 1999. See, IRS' Opening Memorandum at p.6. Exhibit E to Mr. Blaine's Declaration. Debtors however, have asserted the 1988 assessment was time-barred and seek offset or refund of $26,000 paid toward the 1988 taxes. See, Victoria's Osborn's excerpted Affidavit attached to Debtors' Response to IRS' Amended Concise Statement, as Exhibit 3.[13] Offset/refund however, was not named as a defense

---

[11] Following issuance of a notice of deficiency, the taxpayer ordinarily has 90 days to file a petition with the Tax Court, during which the IRS is prohibited from making an assessment. 26 U.S.C. § 6213(a). If a Tax Court petition is filed, the IRS is prohibited from assessing until the Tax Court decision become "final." Id. See also, f.n. #13, infra.

[12] See, 26 U.S.C. §§ 7481(a)(1) (decision is final when appeal period runs) & 7483 (appeal period is 90 days).

[13] For the following reasons, in ruling on the present motion I have considered Ms Osborn's affidavit as excerpted including the footnotes to the excerpts as set out in the original affidavit (although the footnotes were not included in the excerpted version). I have **not** considered the non-excerpted balance of the original.

As noted above, IRS originally moved for summary judgment on November 16, 2005. Part of Debtors' response to that original motion was Ms Osborn's Affidavit along with over 100 pages of exhibits thereto. The Affidavit and exhibits however were not extracted and highlighted as required by LR 56.1(c)(3) (made applicable by LBR 7056-1.A). This deficiency was pointed out in the Court's January 12, 2006 letter to the parties. Exhibit 3 to Debtors' Response to IRS' Amended Concise Statement purports to be an "excerpt" of the original Affidavit. It is unsigned. However, when I compared the signed original to the present excerpted version, the "excerpts" appear accurate, (although the excerpt's page references to the original are not). Nevertheless, IRS argues the excerpted Affidavit should be stricken because Ms Osborn was not listed as a witness by the November 17, 2005 deadline for witness list exchange set in the July 27, 2005 scheduling order. However, IRS adduces no affidavit or

in Debtor's amended objection to claim. As such, it is inappropriate to consider it. Tort Claimants Committee v. Roman Catholic Archbishop of Portland, Adv. # 04-3292-elp at 29, n.18 (Bankr. D. Or. Dec. 30, 2005) (Perris, J.) (unpublished) (defense raised for first time in response to motion for summary judgment not properly before the court). Even if I were to consider it, as explained below, Debtors' limitations defense fails, and so does their claim for refund/offset.

On December 21, 1992, Debtors executed a Form 872-A as to their 1988 taxes. That document extended the limitations period until 60 days after the period in which the making of an assessment is prohibited. It also stated that the agreement will "not reduce the period of time otherwise provided by law for making such assessment." Debtors' Response to the Amended Concise Statement argues by inference that Form 872-A wasn't valid as to the 1988 taxes because it was executed after the 3 year limitations period for assessment. However, the stipulated Tax Court order entered on October 16, 1995, determined there were tax deficiencies for 1988.[14] Under § 505(a)(2)(A)[15] (limiting this court's subject matter jurisdiction), and the doctrine of res judicata, Debtors are precluded from raising any timeliness issues which could have been raised in the Tax Court litigation. Baker v. I.R.S. (In re Baker), 74 F.3d 906 (9th Cir.1996);[16] Bunyan v. U.S. (In Re Bunyan), 354 F.3d 1149, 1151-2 (9th Cir. 2004); Doerge v. U.S. (In Re Doerge), 181 B.R. 358 (Bankr. S.D. Ill. 1995).[17]

The parties have not briefed whether § 505(a)(2)(A) precludes me from considering issues as to the timeliness of an assessment made <u>after</u> a final Tax Court decision. Even if I were to consider the issue, the assessments here were timely.

---

declaration of such failure, only bare representation in its Reply Memorandum. IRS further argues the excerpted Affidavit should not be considered as "expert testimony." I need not address this argument, because, as explained below, even if the excerpted Affidavit is so considered, it does not create an genuine issue of material fact so as to preclude summary judgment.

[14] See Ex. H to Mr. Blaine's Declaration for the amounts of the deficiencies.

[15] Section 505(a)(2)(A) provides:

> The court may not so determine--
>
> > (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.

[16] Baker holds that § 505(a)(2)(A) and principles of res judicata apply equally to <u>stipulated</u> Tax Court judgments, as here.

[17] IRS raised "res judicata" obliquely for the first time in its Reply to Debtors' Response to its Motion for Summary Judgment. See, Reply at p. 4. It has not raised § 505(a)(2)((A) at all. Nonetheless, because § 505(a)(2)(A) goes to this court's subject matter jurisdiction, I may raise it *sua sponte*. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194, n.2 (9th Cir.1988).

There is no dispute the 1988 taxes were assessed on February 5, 1996, within 150 days of the Tax Court decision, which, as discussed above, is the normal deadline for assessment after an un-appealed Tax Court decision. Ms Osborn's excerpted Affidavit however states the assessment deadline was December 15, 1995, which is 60 days after the Tax Court decision. It also states she compared Exhibit C [sic-G-Debtors' Form 872-A] to two blank original Form 872-A's. See f.n. #12 to Ms Osborn's original Affidavit, referencing Exhibits 9 & 10 thereto. Those blank forms (Exhibits 9 & 10) recite in ¶ 3 thereof that "[t]his agreement will negate (instead of "not reduce") the period of time otherwise provided by law for making such assessment." She states examination of Debtors' original signed Form 872-A for 1988 is necessary to see if it contains the "negate" instead of "not reduce" language, as that language difference "is ... the difference between a valid assessment and an invalid assessment for tax periods 1988...." See, page 1 of Exhibit 3 (excerpted Affidavit) to Debtors' Response to IRS' Amended Concise Statement.

If I construe Ms Osborn's statement that Debtors' original Form 872-A must be examined, as a request for more time for discovery, I would deny the request, for the same reasons as discussed above re: accounting. That is, Debtors have not established good cause to extend discovery. They offer no explanation why original Form 872-A was not requested before discovery closed, or a motion to compel its turnover or inspection timely filed.

If I construe her statement as attempting to raise an issue of fact, I conclude it does not. Different language on two blank Form 872-As, when compared to the one Debtors signed, is, in itself, unremarkable. The two blank Form 872-A's were the September, 1980 and June, 1986 versions thereof (Exhibits 9 & 10 to Ms Osborn's original Affidavit), whereas Exhibit G to Mr. Blaine's Declaration indicates Debtors signed the October, 1987 version. Of note, Ms Osborn did not compare a blank October, 1987 version with one executed by Debtors, nor does she state any opinion that Debtors' signatures thereon aren't genuine, or how the form has been "doctored" to replace "negate" with "not reduce."

Finally, even assuming Exhibits 9 & 10 create an issue of fact as to whether Debtors executed a Form 872-A with "negate" language, Debtors do not enunciate, other than in conclusory form, why this is material to their limitations defense. To defeat summary judgment, a non-movant must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. Bryant v. Country Life Ins. Co., 414 F.Supp.2d 981, 989 (W.D.Wash. 2006).

Based on the above, there is no issue of fact as to the timeliness of the 1988 assessment, and therefore, Debtors are not entitled to a refund/offset.

1989: The December 21, 1992, Form 872-A also covered 1989 taxes. It was timely because it was executed within 3 years of the April 15, 1990 return date. In any case, the Tax Court decision covered 1989, and any statute of limitations defense that could have been raised in Tax Court is now barred. As to timeliness of the assessment after the Tax Court decision, Debtors make the same "60 day" argument for 1989 as they do for 1988. See, Ms Osborn's

Messrs Dzieman & Blaine
April 19, 2006
Page-12

excerpted Affidavit,[18] and for the same reasons, it should be rejected. There is no issue of fact regarding the timeliness of the 1989 assessment.

<u>1990</u>: The 1990 returns were filed on April 15, 1991. Form 872-A did not cover 1990. As with 1988 and 1989, the 1990 taxes were included in the Tax Court decision, therefore, Debtors are barred from arguing the statute of limitations lapsed beforehand. As to post decision timeliness, Debtors adduce no evidence contradicting IRS' February 5, 1996 assessment date, which is within 150 days of the Tax Court decision, thus timely.

<u>1994</u>: The 1994 tax returns were filed on April 15, 1995. A notice of deficiency issued on March 12, 1998. Debtors did not file a Tax Court claim. The liability for 1994 was assessed on August 5, 1998, which was within 150 days of the notice, and thus timely.

<u>1995</u>: The 1995 tax returns were filed on April 15, 1996, and the tax assessed on March 8, 1999, within the 3 year statute of limitations.

<u>1996</u>: The 1996 tax returns were filed on April 15, 1997. A notice of deficiency was sent on May 28, 1999. At that time, approximately 10.5 months remained on the 3 year statute of limitations. Debtors filed a Tax Court petition. The Tax Court case was dismissed by order entered March 13, 2001. The same order enumerated tax deficiencies for 1996. The liability for 1996 was assessed on August 27, 2001, which although more than 150 days from entry of the Tax Court order, was still timely because the unexpired 10.5 months could be tacked on. <u>Anderson</u>, <u>supra</u>; <u>Meridian</u>, <u>supra</u>.

<u>1997</u>: The 1997 tax returns were filed on October 19, 1998, and the tax assessed on April 30, 2001, within the 3 year statute of limitations, thus timely.[19]

---

[18] Ms Osborn states the actual 1989 assessment date is February 5, 1996, which was then "backdated" to December 27, 1995. <u>See,</u> excerpted Affidavit at p.2. Either date however, is within 150 days of the Tax Court decision.

[19] Debtors make two further arguments. First, they argue that collection enforcement by levy occurred for 1988 and 1989 taxes without "Collection Due Process" rights being granted. Next they argue IRS failed to give the 60 day notice and demand for payment required by 26 U.S.C. § 6303(a) following the 1988, 1989 and 1990 assessments. These defenses/arguments were raised for the first time in Debtors' Response to Motion for Summary judgment. As such, I decline to consider them .<u>Tort Claimants Committee v. Roman Catholic Archbishop of Portland</u>, Adv. # 04-3292-elp at 29, n.18 (Bankr. D. Or. Dec. 30, 2005) (Perris, J.) (unpublished) (defense raised for first time in response to motion for summary judgment not properly before the court). Further, these defenses were raised only indirectly, by incorporation of conclusory statements in Ms Osborn's excerpted Affidavit, providing another reason for me not to consider them. <u>Id.</u> at 27, n.16 (court need not consider legal conclusions in affidavit in opposition to summary judgment). Finally, Debtors' bare legal arguments are insufficient. <u>Country Life Ins. Co., supra.</u> Debtors have not detailed what "Collection Due Process" rights were violated, nor the statutory or regulatory authority upon which that claim is based. Nor did they detail what damages/remedies are available for "Collection Due Process" violations, or for violations of any

Messrs Dzieman & Blaine
April 19, 2006
Page-13

**Conclusion:**

Based on the above, I find no genuine issue of material fact exists, and that IRS is entitled to judgment as a matter of law as to all amounts claimed except the $500 penalty for 1988 taxes. As to that amount, Debtors are entitled to judgment.

I do find a genuine issue of material fact as to whether the amounts owed are secured in estate property.

The above constitute my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated. An order consistent with the above will be entered.

Very truly yours,

ALBERT E. RADCLIFFE
Bankruptcy Judge

AER:vhd

cc: Ms Carolyn Wade, Oregon Dept. Of Revenue's Attorney
Mr. David B. Mills, Trustee's Attorney

---

"notice and demand" requirement.